There are four assignments that I want to raise, and I want to focus on the last two. The last one was papers, but for the first two I want to address Washington and the second one is something different. There's one thing I want to raise with regard to the motion of the clock. And that is that the purpose of the subpoena was to contain evidence that we believe that came from Washington County was misleading information to be posting this information on the clock. Did you ask Ms. Smith-Cook about that when you proposed it? Yes, we did. You have to ask everyone. Smith-Cook was the one who made the reference to the arm. I'm shocked. You are? I'm not actually shocked. But the point was that if we were able to identify the threat and somebody from the County was able to do that, that goes to the intent of making the right decision. You get to run your case the way you want to, but we're talking about an abuse of discretion here, right? That's a pretty tough standard to overcome. Do you want us to spend our time focusing on whether the district court abuses discretion on this point as opposed to the other ones? I want to ask you about a question not addressed in the briefs, but peripherally addressed. You settled your trespass claim, correct?  With respect to your Fourth Amendment claim, what damage could you have that wasn't covered by the trespass claim? Well, but you received some damages. So my question is if you had actual damage on the trespass and you dismissed that claim with prejudice, what damages would remain on the Fourth Amendment claim? Well, but what invasion of Fourth Amendment rights occurred here other than the trespass? Well, so focus on me what their damage was. It certainly wasn't taking pictures of the ark because that could have been done from anywhere. So if there's a Fourth Amendment violation here, it has to be through entrance into the curtilage, correct? Okay. Wasn't that covered by your trespass damages? No, I don't believe so. Because remember, he arguably trespassed on a part of the property that wasn't covered. Well, but if you – okay. But with respect to – are you saying that your trespass claim only covered the non-curtilage part of the property? Okay. So tell me again what other damage your client suffered other than his entrance onto their property, with respect to the Fourth Amendment, in particular, the entrance onto the alleged curtilage? Counsel, can you hold on just one second? We'll give you more time. Clerk, would you be sure that his microphone is picking up? I think he's speaking into it, but I'm getting an e-mail here that people are not hearing him. They're hearing the bench, but they're not hearing him very well. So will you be sure that's up as high as we can get it? Testing, testing. Is that better? Okay. All right. We'll give you an extra 30 seconds there. Thank you, Your Honor. So in our – to get back to the answer is the damages that occurred were the violation of my client's civil rights. Okay. So on your Fourth Amendment claim, and I know you wanted to focus on the others, but on your Fourth Amendment claim, it fails if there was no entrance into the curtilage, correct? That is correct. So describe for us why you think the inspector entered the curtilage. Because, again, applying the Dunn factors here, the area that he searched, that he entered into, is effectively the Roloff's backyard. It's an area where nobody else is allowed to and allowed to go to. One of the issues here, I think, that the error that the district court made, not only did they have – Backyard generally. He's on a gravel driveway or drive. Well, I don't know that I'd call it a driveway. He climbs through a fence. He walks up along a tree-lined berm. He crosses over what is effectively the driveway of the Roloffs, crosses onto their walking – onto their front walk, and then from there, it is a gravel path or road, whatever you want to call it, but that's an area that nobody is allowed to go to unless the Roloffs allow them to. Can I ask you this, counsel? You know, you were balancing the tests, and some are one way and some are the other, but I guess what I'm troubled with is this. You've got a qualified immunity problem here, I think, and that is what was the law at the time that this occurred? There was a Ninth Circuit case that said what happened is now no problem. Later on, you get Jones, you get Hardina, but they're later. So my question is, under Saussure and Pearson, how do you get around that problem? How could this officer have known that he was violating your client's constitutional rights, assuming, arguendo, that there was a violation of the curvilege? Again, I think the Court addressed that, the Supreme Court addressed that in Jones, where they talk about the fact that it's been – the fundamental premise of the Fourth Amendment right is property rights and trespass. Right. But they're not coextensive. You agree with that, that you can trespass on somebody's property without entering the curvilege. That is correct. However, Mr. Wheeler did receive training. He testified. He received training on trespass laws and the requirements for warrants. The question is, would a reasonable inspector honestly believe that it was all right to crawl through a locked gate, walk up a private driveway, walk through the roll-off's personal property and not be violating the Fourth Amendment? Well, that's not really the test. The test in this case is whether or not this inspector, reasonable or not, entered the curvilege. That is correct. And if he had the worst intent in the world and never entered the curvilege, you don't have a Fourth Amendment claim. And if he had the best intent in the world and entered the curvilege, you do have a Fourth Amendment claim. So put aside his training, put aside his knowledge. Tell me why the area that he entered was curvilege. I've looked at the pictures of the property. It's the cases typically have defined curvilege as a relatively narrow area around a house where you don't expect, where you expect privacy. It doesn't extend to open fields. I'm not, there's no cases involving arcs, I must say. So I can't, I can't tell from that. We were going to all ask you what to cube it, but we decided we weren't going to do that. Oh, thank you very much. I didn't measure that. Why is the area that this inspector entered the curvilege of the home? Fair question. I was answering the Court's earlier question about qualified immunity. So let's talk about why this is curvilege. Okay. You've seen the pictures of the property. The area where Mr. Wheeler went is, let me back up. The courts have said, underdone, what we're really looking for is an area that is demarcated as being separate from or being part of the intimate areas of the home, okay? If you look at the map, if you look at page 11 of the county's brief, there's an aerial photograph. You'll see where the path is where Mr. Wheeler walked, there are three barns. Those three barns separate what is effectively the work area from the Roloff's backyard, okay? The fact that the Roloff's have a large backyard doesn't mean that it's not part of the curvilege. In fact, the cases say that you could, and in fact the trial court even admits, that you could have a curvilege that extends well beyond just the immediacy of the home. How close to the home did the inspector? Roughly about 8 to 10 feet. He came and he walked through an area that is absolutely nobody is allowed to go through without permission from the Roloff's. He walked right next to Mr. Roloff's office, which is where he spends most of his time. When he's not sleeping, he's usually in that office. He, Mr. Wheeler, camped out, took pictures right next to the basketball court, walked past the deck, the volleyball court. These are all areas that nobody on the tours, nobody gets to go there unless the Roloff's allow them to. Question for you on that, counsel. I know, of course, there were photographs of Mr. Wheeler at some point. Are there photographs of him doing the things you just talked about, or this is what he admitted in his deposition, or these are your allegations? There's a video that shows him. So the video shows him doing each of the things that you're talking about. That is correct. Okay. There is a video that shows him walking past, walking through an area that nobody else is allowed to, and these are areas where only the Roloff's are allowed to go, where the only people who go there, they have their family events. They have, it's their escape. One of the things you need to understand about the Roloff's. And he's doing that to gain a position where he can take photographs of the art, which are the only photographs. I'm sorry, say that again. He was making this transit to take photographs of the art on the hill. Those were the only two photos. That is correct. Yeah. And he could have taken those from other vantage points, and we probably wouldn't have this issue here. Absolutely. Absolutely. Because the area that he was in is, by definition, cartilage. This is the private, most intimate areas of the Roloff's property that he went into and conducted his search. And I believe any reasonable person would know that that is a violation of the Fourth Amendment. And remember, he didn't. Did he ever, does the evidence show that he left the gravel road? Well, that's, here's, I'm sorry, say that again. No, here's the, there's a gravel road and then there's gravel, okay? And where he took the picture and then he walked is not actually a road. It's a gravel path, okay? So did he ever leave the gravel road? Yes, he did leave the gravel road. He walked along what is a gravel path between the barns and the volleyball court and the rest of the backyard. And does this gravel path go into the areas that you just discussed? Yes. It does. So in other words, next to Mr. Roloff's office and so on, there is a gravel path. Yes. Okay. That's exactly right. And these are not, typically, no motor vehicles drive on this path. There are, he does drive his, I think they call it a mule on there. But other than that, it's a walking path, for lack of a better term. Can we come back to, and again, let's focus on the entrance into the curtilage for a moment. Describe for me what damages your clients suffered from that. I'm focusing now on the Supreme Court that said the abstract value of a constitutional right is not a basis for 1983 damages. Well, one of the things and probably the most important thing that my clients have suffered is concern for their privacy. They've lost the, here's how I need to explain it. The Roloffs are afflicted with dwarfism. It's different. The world outside their home is different for them as it is for us. Because everybody that they encounter outside their property is a danger to them because they are so much smaller than everyone else. The property, their property is their sanctuary. Okay? That is where they are safe. Can I ask you this? I really do respect what you're saying about that, but I'm wondering, we had a case, Cooper v. FAA, with which I'm familiar, in which the Supreme Court eviscerated any ability to get compensatory damages for violations of privacy, at least under the Privacy Act. Are you suggesting that what is now gone under the Privacy Act is available as part of a constitutional claim for violation of your client's privacy based upon what we will say for the moment was a trespass on the curtilage? I'm not familiar with the Privacy Act, but my, I guess what I would argue is yes, is that what they had taken from them is they believe they've established the property. I mean, look at the gate that they put up, for God's sakes, and the call box, and the measures they've taken to protect the property from intrusion. Okay? And to have somebody crawl through a fence, walk 500 feet, not identify themselves, refuse to identify himself afterwards, that takes away their feeling of security, their right to feel secure in their home. That's a very real damage that the Wolos have suffered and continue to suffer. I understand that. I really do. The question is, under the case law that the Supreme Court's given us, is that compensable given the cause of action that was alleged here? Absolutely, I believe it is. And how would that be measured? We would, well, we had an expert ready to testify who's an expert in dwarfism and who would be able to testify to the damages that the Wolos suffered. So your position is that emotional distress is recoverable in 1983 cases? In a, I believe in a, yes, to the extent that you're violating a right that is as personal as privacy. Yeah. I want to focus on the nature of damage. Your position is that emotional distress is recoverable in these cases over and above the value that's assigned to any trespass? Correct. And what's your authority for that? I don't have any. That's my opinion. I guess what I would ask, then, is in the typical case where somebody, you know, conducts a warrantless search in a home, what are the damages? How do you measure those damages? Well, but in the typical case, those are 1983s. We're throwing out the search. But I just want to, again, I'm sorry for spending a bunch of time on this. You're not making any claim today for any damages that resulted from trespass, are you? Not today, no. No, because you've settled that and dismissed it with prejudice. That is correct. So if you have any damages, the only ones that you can identify for us are the emotional distress damages that you claim were incurred by the entrance into the curtilage. And nominal damages. Well, no, there are no nominal damages. That's the problem. In 1983 cases, you have to have actual damages. And your actual damages here are either trespass damages, for which you've been already recompensed, or emotional distress damages, correct? Correct. Okay. In other words, you're asking us to make new law. You're asking us to make new law. We'll leave it at that. Let's hear from other counsel. Thank you. Thank you, Your Honor. May it please the Court. Chris Gilmore with Washington County. As the Court's pointed out, the issue about damages was not briefed below, and I anticipate that you may have questions for me about that. And then I'll just be honest with you up front, because it wasn't briefed. I'm not sure how much I can add to that discussion, but I'd certainly be happy to entertain any questions. And maybe if we need to get to it, we'll have to ask you to brief it. Okay. My question is this. With respect to at least part of the journey through the property, wasn't the inspector on the curtilage? With respect to what? Part of his journey through the property. Part of his journey. In other words, I'm not – I would be inclined to think that being by the ark was not an entrance onto the curtilage, but he goes within several feet of the house. I don't know whether it's 8 feet or 10 feet. Why isn't that an entrance into the curtilage? Well, let me say, first speak to the facts and then the law. As to the facts, the closest he ever got, as I understood it and as Judge Mossman, the district court understood it, he got within 20 feet. 8 to 10 feet is new to me, but I'll accept that. He wasn't quite sure. He guessed it. Okay. And I don't think that's particularly significant. You agree that Judge Mossman didn't state as a matter of a finding whether he was in the curtilage, right? No, he did not. Okay. That's correct. So are we then on the issue of the curtilage to apply the Dunn factors based upon what we see in the record? That's correct. And as the county does that, how do you weigh those four factors? Well, I could say exactly the way Judge Mossman did, but that's kind of cheating. So let me say this much. Do you agree with Judge Mossman? I need to reiterate them. Yes, absolutely.  I do, but what I would like to offer to supplement so that I can add some value to this discussion is that Jones and subsequent ‑‑ this will tie together. Jones and subsequent case law talk about what some people might characterize as some sort of sea change in Fourth Amendment analysis. And the Jones case, of course, dealt with this physical occupation of property. Forgive me, counsel, but Jones and Hardina has occurred well after this, and for purposes of qualified immunity analysis, we really don't consider them, do we? No. Are we looking at what the officer, what a reasonable officer would have known about the constitutional rights involved at the time that this occurred? Isn't that the law? That's absolutely true. And given that fact, Jones and Hardina are not a factor in our evaluation, are they? No, it's not. The only reason I mentioned that case was to get to the point that in Jones they accepted out the open fields doctrine. They didn't amend that doctrine whatsoever. They cite to the Dunn and Oliver case. And so I was mentioning it just to say that those, notwithstanding Jones, those two cases are intact, and I wanted to mention Dunn and Oliver to you because I believe there's some guiding precement in terms of the elements that you're looking at in this case. Will you help us with this? Applying the law at the time that Mr. Wheeler entered the property, what was it about Fourth Amendment law that was confusing, as to which he could not have reasonably known that would exculpate him on the basis of qualified immunity? I don't believe it was confusing based on Judge Moss's conclusion that he did not commit a constitutional offense. Okay. Well, I understand your point. But let's assume arguendo, that he actually did enter the curtilage. So if he did that, why is he entitled to qualified immunity? In other words, it was the law sufficiently clear that he should have known that if he entered the curtilage, he would be violating these folks' constitutional rights. No. There was no – I might be misunderstanding the question. Well, no, let me try it again because I'm interested in the answer to this. I think it was clear back at that time, and indeed well before it, that one could not enter the curtilage of a home without some Fourth Amendment excuse to do so. The government can't come into the curtilage of my home without a Fourth Amendment excuse, right? No. Actually, I think the important point is, and this is entrainer, is that it's not whether you enter the curtilage, but it's whether you conduct a search in the curtilage. Okay. Fair enough. So you're – what you're saying is that at the time, he couldn't have known what? What couldn't he have known at the time? Well, it's somewhat sophisticated for a building inspector, but he couldn't have known at the time had he gone into an open field and collected information in that open field and passed through the curtilage, that that was unconstitutional. He couldn't have known that. Your question is that – It was that trainer that told him he could do that. At the time, it was unclear that the Fourth Amendment barred him from entering the curtilage as long as he didn't conduct a search while he was in it. That's – that was my understanding of the law, and had I – Yes. Yes. Yes, and I – Okay. So that's helpful. So your position is that it wasn't clear at the time that entering the curtilage by itself was a Fourth Amendment violation. Right. In the absence of a concomitant search in the curtilage. That's correct. Okay. And just more of a comment, but it's the juxtaposition that's difficult in answering that question is, of course, we don't train our building inspectors that way. But that was – Well, and this is not a negligence case, and you've already paid for the trespass. Fair enough. I just had a couple of – You also talk about the use of the property for tours, television shows. What's your point there? Well, and that was one fact that hadn't come up yet. And the fourth done factor, I believe, is the extent to which the property owner is taking efforts to protect or obscure, obstruct the public being able to view this area, that you've made some efforts to make sure that it's private. And I think it's a fact to consider in that done factor about whether or not you're – The record tells us about that. Well, the record has a TV episode that this entire encounter was put on national television, and it seems to not rest well with the idea that it's a privacy interest at stake here. Well, I think that's a little different issue than what we're talking about here. I want to focus back in on my hypothetical, which is let's assume – and we're not saying this is the fact – but let's assume that in weighing the done factors, we conclude – arguendo – that Mr. Wheeler did, in fact, enter the curtilage. At the time he did so, was the law clear that if he went into the curtilage, even though he was looking to take pictures of the ARC, that he would be violating the roll-off's constitutional rights? Not unless he was conducting a search, and I'd turn to Treanor for that answer. Okay. So the whole thing, from your perspective, turns on whether or not he was conducting a search within the curtilage? Yes. Okay. So in other words, since he was allegedly looking at the ARC, which was not in the curtilage, and nobody seems to dispute that. Right. That's exculpating, so that if he went onto the curtilage by accident or whatever, that because it's not a search, the law would not have been clear, Jones and Hardinas had not been decided, and therefore he gets qualified immunity. Is that your perspective? That's correct. Okay. Do you have authority for that, by the way? Any case law that you would refer us to that is the best case for that proposition? Other than Treanor, I do not. Okay. All right. And so just a few record issues that I wanted to mention when you get to the issue of search. And I, you know, from my perspective, had, in the hypothetical sense, had Mr. Wheeler gone onto the property, walked into the home, clearly into the curtilage and sat down at the kitchen table and had a cup of coffee, completely nonrelated county business, but in the county uniform, and then left. And there's no search. There's no Fourth Amendment violation. There's probably breaking and entering. He's probably broken some criminal laws, but it's not Fourth Amendment. Fourth Amendment is a gathering of information, and they talk about that right in Jones, whether it's criminal or civil. And, of course, this is a civil case. But as to searching other than the ARC, which doesn't seem to be in dispute, at least with the overwhelming evidence in the record, the one thing that I did see in the brief, and I just wanted to mention it because I checked it last night, is at one point when you're watching the video, Mr. Wheeler brings the camera up to his face and kind of points it in a direction that's not at the ARC, and they're suggesting all of a sudden that becomes some search other than the purpose of the search that's supported by the evidence in the record. I looked at the oral transcript and the motions below, and I don't know that that issue was before Judge Moss. So I'm just wondering, who's burden is it to show whether Mr. Wheeler conducted a search within the curtilage if he did in fact go in the curtilage? Is it their burden to show it, or is it your burden to say it didn't happen? Well, I'll just say that it's both. And in this case, they didn't carry their burden to demonstrate that we had. I think it's the question. In other words, if your client says, whatever I did there, I did for the exclusive purpose of taking pictures of the ARC. As far as you're concerned, that carries the burden. If they say, look, look at this camera shot. It shows right here he was looking in Mr. Roloff's office or something like that. He was clearly looking for something there. That's a search. How do we weigh that? Well, I think that's the de novo. So you're looking at the evidence and balancing that, and I think that's your call. I mean, Judge Mossman looked at it, and he felt that the evidence showed that there was no search there. And so I think for the most part, it's appellant's burden to at least say to you that that happened, that he did point the camera into the office, but you just don't have any evidence there to show that. You need something more than argument. The facts here are not disputed, are they? No, not that I'm aware of, no. I mean, nobody is saying that Judge Mossman erred by doing this on summary judgment. They're just saying he came out the wrong way.  That's correct. So Traynor is a criminal case, not a qualified immunity case. Right. Do you read Traynor as saying that the Fourth Amendment is not violated when somebody enters the curtilage, or just simply saying that there's nothing to suppress when nothing is seized in the curtilage? You know. You see, I wonder whether it's just an exclusionary rule case and not a definition of Fourth Amendment rights. That's an excellent point, and Judge Mossman pushed us in the proceeding below about the difference between the Fourth Amendment criminal case law and how that plays over into a civil 1983 action. And a lot of these cases borrow from that criminal context, and so that's exactly what I'm doing here, but it's a very fair question. So other than that, the last issue I just wanted to touch on briefly was the equal protection clause, and there was some question about whether or not we were allowed to raise a cross-assignment of error, and I just wanted to say that the case that was cited by appellants says basically what I thought I could do, which I will admit readily I didn't see in the appellate rules, but this is the United States American Railway Express Company case that was cited in appellant's materials. I'm just reading from it. Appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reason of the lower court. And so essentially my cross-assignment is offering another basis. I think you have the discretion to do that yourself, and whether procedurally I've done that correctly or not, I at least have some case to support it, but I had difficulty finding that. Can I bring you back to Treynor again? My colleague has pointed out that this is, of course, a criminal case, Treynor. Yes. When Mr. Wheeler entered into the property, whether or not under the curlage, was he, can he be said to have been investigating a potential criminal violation? No. No. No. It's strictly civil under any circumstances, right? It's absolutely civil. He's not deputized in any manner, and that's not outside the scope of the law. Okay. So there's nothing in the county code that would permit a continuing violation of a zoning ordinance to be criminalized? No. That's correct, Your Honor. Okay. So I'm just, I want to ask this question in the abstract. Your zoning inspectors or building inspectors, do they have the authority to enter property in general without the permission of the? Absolutely not. So this was an unauthorized mission, if you will? Absolutely. It was a mistake, and we paid for it, and that's why we compensated them. What's your position on whether or not they have any damages other than the ones they've been compensated for? Now, you know, I understand. You said you weren't prepared to address the emotional distress part of it. I think it's an honestly side-stepping your question a bit, but it's all I can say, is that I did brief the issue of damages based on State law in the record below, and my argument was that in the context of trespass, you are not entitled to emotional damages unless there's some sort of physical damages and some sort of causation from those physical damages for the emotional address, and I would say that those same principles apply, but that's the best that I can do with that question. Thank you. Any other questions for my colleague? Thank you. Thank you both. It's a very interesting and difficult case, and we appreciate your argument. The case just argued is submitted. The Court will stand in recess for the day. Thank you. Thank you.
judges: Pro, Smith, Hurwitz